UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
WINSTON GUZMAN,

                                  Plaintiff,           **COMPLAINT**

          -against-
                                                  **Case No. 25-cv-8908**

THE CITY OF NEW YORK; NYPD OFFICER PAUL COZZOLINO;
NYPD OFFICER DERRICK WRIGHT; NYPD SERGEANT JUDY
DURAN; NYPD OFFICER JOVAN HALL; NYPD SERGEANT
JOSE CORDERO; NYPD OFFICER JEAN SANTIAGO; NYPD
OFFICER FRANK ANNUNZIATA; NYPD SERGEANT DINO
VUCETOVIC; AND NYPD MEMBERS JOHN DOES 1-6,

                                   Defendants.
-------------------------------------------------------------------------------X

Plaintiff WINSTON GUZMAN, by and through his attorneys, COHEN&GREEN

P.L.L.C. and GIDEON ORION OLIVER, hereby complains of Defendants as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action pursuant to 42 U.S.C. § 1983, the First, Fourth, and Fourteenth
   Amendments to the United States Constitution, and New York State and City law.

2. This Court has jurisdiction over the claims herein pursuant to 28 U.S.C. §§ 1331, 1343,
   and 1367, and 42 U.S.C. § 1983.

3. Venue is proper pursuant to 28 U.S.C. § 1391, et seq., in the Southern District of New
   York, where Plaintiff Guzman resides, Defendant City of New York has offices, and all
   the actions complained of herein occurred.

4. As Plaintiff alleges that Defendants violated his rights guaranteed under the laws of the
   State of New York, the Court has jurisdiction over those claims arising under the laws of
   the State of New York, by and through 28 U.S. § 1367(a).

1

5. Plaintiff timely served Notices of Claim on the municipal Defendant and complied with all conditions precedent to commencing an action under state law.

6. At least thirty days have elapsed since service of Plaintiff's Notices of Claim and adjustment and payment thereof has been neglected or refused.

7. This action has been initiated within one year and ninety days of the accrual of Plaintiff's claims pursuant to New York state law.

## **PARTIES**

8. At all times mentioned herein, Plaintiff WINSTON GUZMAN (Mr. Guzman; he/him) was a resident of Bronx County in the City and State of New York.

9. At all relevant times mentioned herein, Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

10. At all relevant times mentioned herein, NYPD Officer Paul Cozzolino was assigned Shield No. 23132, Tax Registration No. 974807, and Command 50. Defendant Cozzolino participated in arresting and assaulting Mr. Guzman on July 28, 2024, as detailed below. Defendant Cozzolino's name appears as the affiant on Mr. Guzman's dismissed and sealed criminal complaint.

11. At all relevant times mentioned herein, NYPD Officer Derrick Wright was assigned Shield No. 20447, Tax Registration No. 976915, and Command 46. Defendant Wright participated in arresting Mr. Guzman on July 28, 2024, as detailed below.

12. At all relevant times mentioned herein, NYPD Sergeant Judy Duran was assigned Shield No. 03502 and Tax Registration No. 958536. Defendant Duran participated in arresting Mr. Guzman on July 28, 2024, as detailed below.

13. At all relevant times mentioned herein, NYPD Sergeant Jose Cordero was assigned Shield No. 3477 and Tax Registration No. 956547.

14. At all relevant times mentioned herein, NYPD Officer Jean Santiago was assigned Shield No. 21336 and Tax Registration No. 976848.

15. Mr. Guzman does not currently know the names of Doe Defendants 1-3, but upon information and belief, their names are known to the defendants.

16. Mr. Guzman only has the following descriptions:

    a.  NYPD Members Does 1-3 all wore blue NYPD uniforms. All 3 Does assisted NYPD Member Cozzolino in tackling Mr. Guzman and holding Mr. Guzman face down on sidewalk, then arrested Mr. Guzman.

17. Defendants Cozzolino, Wright, Duran, Hall, Cordero, Santiago, and John Does 1-3 are collectively referred to herein as the "July 28 Defendants."

18. At all relevant times mentioned herein, NYPD Officer Frank Annunziata was assigned Shield No. 356, Tax Registration No. 972510, and Command 52. Defendant Annunziata participated in arresting Mr. Guzman on October 25, 2024, as detailed below.

19. At all relevant times mentioned herein, NYPD Sergeant Dino Vucetovic was assigned Shield No. 4247, Tax Registration No. 959347, and Command 52.

20. Mr. Guzman does not currently know the names of Doe Defendants 5 and 6, but upon information and belief, their names are known to the defendants.

21. Defendants Annunziata, Vucetovic, and John Does 5 and 6 are collectively referred to herein as the "October 25 Defendants."

22. Each individual Defendant is sued in his or her individual and official capacities.

23. The Defendants are NYPD members who unlawfully used excessive force, arrested, and/or detained Mr. Guzman and others similarly situated in violation of their constitutional rights.

24. At all times hereinafter mentioned, the Defendants were employed by the City of New York as members of the NYPD.  Some of their true names, as noted throughout this Complaint, are currently unknown to Mr. Guzman.

25. At all times hereinafter mentioned, Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

26. Each and all of the acts and omissions of the Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the Defendant City.

27. Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, and on behalf of, and with the power and authority vested in them by Defendant City, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

28. Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or

condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

29. At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

30. Although there was a reasonable opportunity to do so, at no time did any of the Defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow officers.

## STATEMENT OF FACTS

### MR. GUZMAN'S EXPERIENCE ON JULY 28, 2024

31. July 28, 2024, was the Dominican Day Parade in the Bronx. The sidewalks near 167th and Grand Concourse were filled with people watching the parade and celebrating. Mr. Guzman was there in the crowd.

32. Around 5 p.m., as Mr. Guzman was walking down the crowded Bronx sidewalk near the intersection of 167th and Grand Concourse, he noticed police activity. There was a large group of uniformed police near where a car was being towed.

33. Mr. Guzman had been recording the parade with his camera phone, and he continued recording the law enforcement activity.

34. Mr. Guzman then heard NYPD Defendant Judy Duran claim that a man was blocking the sidewalk by sitting on a public bench that was bolted to the sidewalk. Defendant Duran ordered the gentleman to leave the immovable bench.

35. Mr. Guzman verbally protested, exercising his First Amendment right to argue that Defendant Duran was wrong.

36. He also exercised his right to record her law enforcement activities while she was in an NYPD uniform on a crowded public sidewalk.

37. Mr. Guzman was recording Defendant Duran.

38. Defendant Duran was performing official duties, in public.

39. He did not physically impede her or even touch her.

40. Defendant Duran interfered with his recording law enforcement activities when she held her hand up to cover the camera on his phone.

41. When he moved his phone away from her hand, she grabbed his wrist.

42. As soon as she grabbed him, Mr. Guzman pulled away from her and said, "Don't touch me."

43. That is when the NYPD members, including NYPD Defendants Wright and Cozzolino, who had been hovering near Mr. Guzman, close enough to have heard Mr. Guzman argue with Defendant Duran, closed in on Mr. Guzman.

44. Defendant Wright then grabbed Mr. Guzman and slammed him down to the hard sidewalk, face first, *inter alia* assaulting him and unlawfully interfering with his recording of law enforcement activities.

45. While he was held to the ground, Mr. Guzman could feel NYPD members, including Defendant Cozzolino, grabbing his arms and pulling them in different directions.

46. Mr. Guzman felt multiple punches land on his ribs and maybe on his legs.

47. He felt pain from each blow that landed, and he was bleeding from a scrape on his head.

48. After being taken to the ground, his elbows, knees, and shoulder were scraped, in addition to his head.

49. Mr. Guzman tried to let the police handcuff him.

50. When he finally managed to get his arms behind his back, the beating stopped, and the NYPD members locked metal handcuffs around his wrists.

51. NYPD Defendants Cordero and Santiago stood by as Mr. Guzman was brutalized by their fellow NYPD members, and they did nothing to intervene.

52. NYPD members – including NYPD Defendants Cozzolino, Wright, and Duran – detained and arrested Mr. Guzman without a warrant, probable cause, consent, or lawful justification.

53. Because of the actions of Defendants Cozzolino, Wright, and Duran, Mr. Guzman was not able to continue recording law enforcement activity. The Defendants knocked his camera from his hand when they jumped on him and took him to the ground.

54. NYPD members then drove him to the 46th precinct.

55. Mr. Guzman was visibly bleeding from the scrape on his head and was in pain from when the NYPD members took him to the ground and beat him.

56. He asked for medical attention and told the police about the pain he was experiencing as soon as he got to the precinct.

57. But Mr. Guzman did not get medical attention until hours later, what felt like four or five hours later.

58. When a medical team finally came, they cleaned his visible injuries.

59. NYPD members searched Mr. Guzman's person without a warrant, probable cause, consent, or other lawful justification. NYPD members unlawfully seized Mr. Guzman's property.

60. Some of Mr. Guzman's property, including his phone, the instrument used by Mr. Guzman to record law enforcement activity which also contained recorded images of law enforcement activity, was damaged. Some of Mr. Guzman's property was never returned. NYPD members kept some of Mr. Guzman's property without providing Mr. Guzman any documentation of the seizure or retention; opportunity to retrieve the property; or opportunity to test the legality of the seizure before a neutral fact-finder.

61. The NYPD moved Mr. Guzman from the precinct to Bronx Central Bookings, handcuffing and searching him once again without a warrant, consent, probable cause, or other lawful justification, when they moved him.

62. Mr. Guzman was arrested around 4pm on July 28, 2024, and did not see a judge until around 8pm on July 29, 2024. He spent approximately 28 hours in NYPD custody after his unjustified arrest.

63. The Bronx District Attorney's Office (DA) charged him with two misdemeanor offenses – obstructing governmental administration and resisting arrest.

64. Upon information and belief, Defendant Cozzolino included materially false factual allegations in the criminal complaint, which he knew to be false when he swore them out. For example, he falsely claimed that he saw Mr. Guzman strike Defendant Duran with an open hand, when video evidence showed that it was Defendant Duran who grabbed Mr. Guzman without him ever touching her.

65. Mr. Guzman appeared in court twice before a criminal court judge dismissed all the charges against him on November 4, 2024.

66. The Defendants' conduct directly and proximately caused physical and severe emotional injury to Mr. Guzman.

67. The Defendant's conduct unlawfully interfered with Mr. Guzman's lawful recording of law enforcement activities.

### MR. GUZMAN'S EXPERIENCE ON OCTOBER 25, 2024

68. Police from the 52nd precinct in the Bronx took property from Mr. Guzman on October 24, 2024, including the keys to his home, his phone – the instrument used by Mr. Guzman to record law enforcement activity which also contained recorded images of law enforcement activity – and his credit and debit cards.

69. Around 9 p.m. the next day, October 25, 2024, as soon as he was able to get to the precinct after being released from Bronx central bookings, Mr. Guzman went to retrieve his property.

70. Before Mr. Guzman could enter the precinct, NYPD Defendant Frank Annunziata met him at the door and asked why he was there. Mr. Guzman gave Defendant Annunziata the voucher for his property, including the instrument Mr. Guzman used to record law enforcement activity which contained recorded images of law enforcement activity, and Defendant Annunziata told Mr. Guzman to stay outside while he went in.

71. A few minutes later, Defendant Annunziata invited Mr. Guzman into the precinct.

72. Once he was inside, Mr. Guzman tried to follow formal process.

73. He went to speak with the NYPD member at the front desk, Defendant John Doe 5. Another NYPD member, Defendant John Doe 6, then got involved.

74. Defendant John Doe 6 told Mr. Guzman that he had to sign a screen before he could even see his property – but the screen was completely blank, and Mr. Guzman had not yet seen his property. He did not know what he would have been agreeing to by signing the blank screen. Defendant John Does 5 and 6 told him the signature would signify he was getting his property back, but Mr. Guzman reasonably pointed out he could not affirm that because he had not actually gotten his property back.

75. Mr. Guzman asked to see his property, including the instrument Mr. Guzman used to record law enforcement activity which contained recorded images of law enforcement activity, before he would sign anything.

76. Mr. Guzman continued trying to follow formal process, asking for a supervisor or captain but none came.

77. Defendants Annunziata and John Does 5 and 6 then ordered him to leave. But Mr. Guzman could not leave to anywhere without his phone, the instrument Mr. Guzman used to record law enforcement activity which contained recorded images of law enforcement activity, keys, or anything he would need to get home.

78. Defendants Annunziata and John Does 5 and 6 then preceded to use unnecessary physical force against him to throw him out of the precinct.

79. Defendant Dino Vucetovic saw the other NYPD members use unnecessary physical force and did not intervene.

80. Mr. Guzman was pushed by NYPD members causing an injury to Mr. Guzman's ankle.

81. After injuring Mr. Guzman's ankle, Defendant NYPD members applied metal handcuffs to Mr. Guzman's wrists with extreme tightness. Mr. Guzman complained about the excessive tightness of the handcuffs, but the members of the NYPD to whom Mr.

Guzman complained did not take any steps to alleviate the excessive tightness of the handcuffs until after Mr. Guzman was forced to endure the excessively tight handcuffs for an extended period of time.

82. Mr. Guzman was then dragged by the handcuffs and lifted by his arms while restrained by handcuffs which exacerbated the tightness of the handcuffs. Mr. Guzman's body was contorted into unnatural positions by being carried by his arms in handcuffs.

83. Mr. Guzman requested medical attention. Defendant NYPD members ignored him.

84. Instead, Defendant NYPD members forcibly threw him into a filthy cell floor while his wrists were still in metal handcuffs behind his back. He landed on his neck and remained face down on the floor while he was in the cell. He remained lying on the ground of the cell for a few hours.

85. When an NYPD member came to release him, Mr. Guzman again asked for an ambulance. The NYPD members carried him to the ambulance and only then did they uncuff him. They threw a C-Summons on his lap for disorderly conduct.

86. Some of Mr. Guzman's property was damaged and destroyed, including the instrument Mr. Guzman used to record law enforcement activity which contained recorded images of law enforcement activity. Some of Mr. Guzman's property was never returned. NYPD members kept some of Mr. Guzman's property without providing Mr. Guzman any documentation of the seizure or retention; opportunity to retrieve the property; or opportunity to test the legality of the seizure before a neutral fact-finder.

87. When Mr. Guzman went to court for the C-Summons, the criminal court clerk told him that the NYPD did not file a legally acceptable accusatory instrument.

88. The Defendants' conduct directly and proximately caused physical and emotional injury to Mr. Guzman, including anxiety, pain to his wrists, and a fracture to his left rib.

## THE NYPD'S POLICY AND/OR PRACTICE OF USING EXCESSIVE FORCE TO CONTROL THE SPEECH OF MEMEBRS OF THE PUBLIC

89. Defendants used types and levels of force that were excessive and unnecessary force against Mr. Guzman.

90. The uses of force against Mr. Guzman were in contravention of, or inconsistent with, related, written NYPD policies and/or training.

91. Defendants used force that they knew, or should have known, would negatively impact Mr. Guzman, and/or cause lasting pain, suffering, and/or injury, without making individualized or otherwise appropriate determinations about whether these uses of force were necessary, justified, or reasonable under these circumstances.

## FIRST CLAIM FOR RELIEF

### Unlawful Seizure / False Arrest

*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Mr. Guzman' Rights Under the Fourth and Fourteenth Amendments to the United States Constitution*

92. Mr. Guzman incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

93. Defendants' seizures of Mr. Guzman herein were done without any judicial warrant authorizing them to seize Mr. Guzman, was unreasonable, and were done without privilege or lawful justification.

94. Mr. Guzman did not consent and was conscious of his confinement by Defendants.

95. Defendants did not have individualized probable cause to seize, detain, or arrest Mr. Guzman.

96. As a result of Defendants' acts and omissions, Defendants deprived Mr. Guzman of his federal, state, and/or other legal rights; caused Mr. Guzman bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Mr. Guzman to expend costs and expenses; and/or otherwise damaged and injured Mr. Guzman.

97. The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SECOND CLAIM FOR RELIEF

### Excessive Force

*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Mr. Guzman' Rights Under the Fourth and Fourteenth Amendments to the United States Constitution*

98. Mr. Guzman incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

99. Defendants' uses of force against Mr. Guzman were unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted Defendants.

100. As a result of Defendants' acts and omissions, Defendants deprived Mr. Guzman of his federal, state, and/or other legal rights; caused Mr. Guzman bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Mr. Guzman to expend costs and expenses; and/or otherwise damaged and injured Mr. Guzman.

101. The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## THIRD CLAIM FOR RELIEF

### First Amendment

*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Mr. Guzman' Rights Under the First and Fourteenth Amendments to the United States Constitution*

102.  Mr. Guzman incorporates by reference the allegations set forth in all preceding and

following paragraphs as if fully set forth herein.

103.  Defendants imposed restrictions on such protected speech and/or conduct that violated

Mr. Guzman's First Amendment right, including, but not limited to, in falsely arresting

Mr. Guzman, in subjecting Mr. Guzman to excessive force, in selectively enforcing laws

and regulations against Mr. Guzman, and in otherwise violating Mr. Guzman's rights and

engaging in the acts and omissions complained of herein.

104.  In addition to being retaliatory, the restrictions Mr. Guzman complains of herein, which

Defendants imposed on Mr. Guzman' First Amendment right to participate in, observe,

and/or stand nearby, speech, conduct, association, and/or other expressive activities

protected by the First Amendment on the streets, were themselves regulations on Mr.

Guzman's protected conduct that:

    a.  Were viewpoint discriminatory and/or otherwise not content-neutral, and were not
necessary, and precisely tailored, to serve compelling governmental interests,
and/or were not the least restrictive means readily available to serve those
interests; or, alternately,

    b.  Were content-neutral, but lacked narrow tailoring to serve a significant
governmental interest, in that they burdened substantially more protected speech
and/or conduct than necessary to serve those interests, and/or failed to provide
ample alternatives for Mr. Guzman's protected expression, including in that Mr.
Guzman's abilities to communicate effectively were threatened; and/or

    c.  Afforded Defendants unbridled or otherwise inappropriately limited discretion to
limit or deny Mr. Guzman' abilities to engage in protected conduct (also raising
constitutionally significant Due Process-based vagueness and/or overbreadth
concerns); and/or

    d.  Amounted to the imposition of strict liability on Mr. Guzman for engaging in
protected speech and/or expression.

105.  As a result of Defendants' acts and omissions, Defendants deprived Mr. Guzman of his

federal, state, and/or other legal rights; caused Mr. Guzman bodily injury, pain, suffering,

psychological and/or emotional injury, and/or humiliation; caused Mr. Guzman to expend

costs and expenses; and/or otherwise damaged and injured Mr. Guzman.

106.  The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or

reckless, and was of such a nature that punitive damages should be imposed against them.

### FOURTH CLAIM FOR RELIEF

#### First Amendment Retaliation

***Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Mr. Guzman' Rights Under the First and Fourteenth Amendments to the United States Constitution***

107.  Defendants retaliated against Mr. Guzman for engaging in speech and/or conduct

protected by the First Amendment.

108.  Defendants engaged in the acts and omissions complained of herein in retaliation for

Mr. Guzman's protected speech and/or conduct.

109.  Defendants engaged in the acts and omissions complained of herein in order to prevent

Mr. Guzman from continuing to engage in such protected speech and/or conduct.

110.  Defendants engaged in the acts and omissions complained of herein in order to prevent

and/or discourage Mr. Guzman from engaging in similar protected conduct in the future.

111.  Additionally, as discussed elsewhere herein, Defendant City designed and/or

implemented policies and practices pursuant to which those Defendants who

implemented them subjected Mr. Guzman to violations of his First Amendment right.

112.  Upon information and belief, Defendants engaged in the acts and omissions complained

of herein with respect to Mr. Guzman' First Amendment-based claims—including the

related municipal liability claims involving the adoption of policies, practices, and/or

customs and/or related failures to train, supervise, and/or discipline—with malice.

113.  Upon information and belief, Defendants engaged in the acts and omissions complained

of herein with respect to Mr. Guzman' First Amendment retaliation claims—including

the related municipal liability claims involving the adoption of policies, practices, and/or customs and/or related failures to train, supervise, and/or discipline—in response to the perceived viewpoint and/or message expressed by Mr. Guzman.

114.  Additionally, some of the offenses charged against Mr. Guzman, which Defendants might argue provided probable cause for Mr. Guzman' arrest, were offenses that Defendants typically exercise their discretion not to enforce, or not to make arrests in connection with.

115.  Mr. Guzman suffered actual chill, including in that Mr. Guzman was prevented and/or deterred from or impeded in participating in protected conduct on the date of and after the incident; and/or suffered adverse effects on his protected speech and/or conduct; and/or otherwise suffered some concrete harm(s).

116.  Additionally, as discussed elsewhere herein, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in arresting and detaining Mr. Guzman subjected Mr. Guzman to the violations of his First Amendment right described elsewhere herein.

117.  As a result of Defendants' acts and omissions, Defendants deprived Mr. Guzman of their federal, state, and/or other legal rights; caused Mr. Guzman bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Mr. Guzman to expend costs and expenses; and/or otherwise damaged and injured Mr. Guzman.

118.  The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FIFTH CLAIM FOR RELIEF

### Due Process

*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Mr. Guzman' Rights Protected*
*Under the Fifth and Fourteenth Amendments to the United States Constitution*

119. Mr. Guzman incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

120. As described above, Defendants enforced offenses in a manner that rendered them constitutionally void for vagueness and/or overbroad, such that their enforcement against Mr. Guzman violated their Due Process rights, in that Defendants' enforcement in connection with those offenses failed to provide and/or reflected the absence of adequately clear standards to guide police officials' extremely broad discretion to arrest anyone at their whim, based on ad hoc determinations, often without fair warning.

121. Additionally, as discussed elsewhere herein, Defendants City, including by its officials designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in seizing and/or retaining Mr. Guzman's property and/or detaining Mr. Guzman in the conditions as described subjected Mr. Guzman to the violations of his Due Process rights described elsewhere herein.

122. As a result of Defendants' acts and omissions, Defendants deprived Mr. Guzman of his federal, state, and/or other legal rights; caused Mr. Guzman bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Mr. Guzman to expend costs and expenses; and/or otherwise damaged and injured Mr. Guzman.

123. The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SIXTH CLAIM FOR RELIEF

### Deprivation of Fair Trial Rights

*Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Mr. Guzman' Rights Protected*
*Under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution*

124.  Mr. Guzman incorporates by reference the allegations set forth in all preceding and subsequent paragraphs as if fully set forth herein.

125.  Defendants fabricated evidence of a material nature, likely to influence a jury's decision, intentionally forwarded that evidence to prosecutors, as a result of which Mr. Guzman suffered liberty deprivations and other injuries.

126.  Defendant Cozzolino knowingly and intentionally transmitted false information to the New York County District Attorney by swearing in a criminal complaint that Mr. Guzman struck Defendant Duran with an open hand.

127.  This statement was untrue, was communicated to a prosecutor, and was likely to influence the decision of any jury weighing the evidence presented in a prosecution of Mr. Guzman.

128.  As a result of Defendants' acts and omissions, Defendants deprived Mr. Guzman of their federal, state, and/or other legal rights; caused Mr. Guzman bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Mr. Guzman to expend costs and expenses; and/or otherwise damaged and injured Mr. Guzman.

129.  The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### SEVENTH CLAIM FOR RELIEF

**Malicious Prosecution**

***Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Protected Under the Fourth and Fourteenth Amendments to the United States Constitution***

130.  Mr. Guzman incorporates by reference the allegations set forth in all preceding and subsequent paragraphs as if fully set forth herein.

131.  Upon information and belief, Defendants misrepresented and falsified evidence to the prosecutor and/or failed to make a full statement of the relevant evidence – including potentially exculpatory evidence - to the prosecutor.

132.  Defendants were directly and actively involved in the initiation or prosecution of criminal proceedings against Mr. Guzman, including by supplying and creating false information to be included in NYPD paperwork that was included in NYPD paperwork, providing falsely sworn information in accusatory instruments, and/or providing false information to the prosecutor.

133.  Defendants lacked probable cause to initiate and continue criminal proceedings against Mr. Guzman.

134.  Defendants acted with malice in initiating criminal proceedings against Mr. Guzman.

135.  Notwithstanding Defendants' misconduct, the criminal proceeding against Mr. Guzman was favorably terminated pursuant to New York Criminal Procedure Law § 160.50(3).

136.  As a result of Defendants' acts and omissions, Defendants deprived Mr. Guzman of their federal, state, and/or other legal rights; caused Mr. Guzman bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Mr. Guzman to expend costs and expenses; and/or otherwise damaged and injured Mr. Guzman.

137.  The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## **EIGHTH CLAIM FOR RELIEF**

**Violation of New York City Administrative Code § 8-802**
**Deprivation of Rights**

138.  Mr. Guzman repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

139.  The acts of Defendant Officers constituted conduct under color of the laws of the State of New York, under color of the laws, rules, and regulations of the City of New York, and under color of the customs and usages of the City of New York and of the New York City Police Department.

140.  The acts of Defendant Officers caused Mr. Guzman to be deprived of his rights, as they are granted and guaranteed to him by N.Y.C. Admin. Code §§ 8 – 802, to be secure in his person against unreasonable search and seizure.

141.  The acts of Defendant Officers caused Mr. Guzman to be deprived of his rights, as they are granted and guaranteed to him by N.Y.C. Admin. Code §§ 8 – 802, to be secure in his person against the use of excessive force in connection with Defendants' search and seizure of Mr. Guzman.

142.  The Defendant Officers, while in uniform, unlawfully seized, searched and arrested Mr. Guzman in violation of N.Y.C. Admin. Code §§ 8 – 802.

143.  As a result of the foregoing, Mr. Guzman was deprived of his liberty, was denied fundamental constitutional rights, was publicly embarrassed and humiliated, was caused to suffer severe emotional distress, was incarcerated and forced to incur legal expenses and costs to defend himself and obtain his liberty, was caused to feel unwell during the arrest processing and suffered embarrassment and pain and suffering during and due to his arrests.

144.  As a result of the above conduct, the City of New York is liable, under New York City Administrative Code § 8-803(b) and under the doctrine of respondeat superior, for the

conduct of the Individual Defendants, and for any damages the Individual Defendants

caused by and through their conduct.

## NINTH CLAIM FOR RELIEF

### Violation of New York City Administrative Code § 8-803
### Failure To Intervene

145.  Mr. Guzman repeats and realleges the foregoing paragraphs as if the same were fully

set forth at length herein.

146.  The acts of all Defendant Officers constituted conduct under color of the laws of the

State of New York, under color of the laws, rules, and regulations of the City of New

York, and under color of the customs and usages of the City of New York and of the New

York City Police Department.

147.  The failure of Defendant Officers to intervene, in violation of N.Y.C. Admin. Code § 8

– 803, caused Mr. Guzman to be deprived of his rights, as they are granted and

guaranteed to him by N.Y.C. Admin. Code § 8 – 802, to be secure in his person against

unreasonable search and seizure.

148.  The failure of Defendant Officers to intervene caused Mr. Guzman to be deprived of his

rights, as they are granted and guaranteed to him by N.Y.C. Admin. Code §§ 8 – 802, to

be secure in his person against the use of excessive force in connection with Defendants'

searches and seizures of Mr. Guzman.

149.  The failure of the Defendant Officers to intervene while other Defendant Officers

unlawfully seized, searched and arrested Mr. Guzman, caused Mr. Guzman to be

deprived of the right to be secure against such illegal acts as it is granted and guaranteed

to him by N.Y.C. Admin. Code §§ 8 – 802.

150.  As a result of the foregoing, Mr. Guzman was deprived of his liberty, was denied fundamental constitutional rights, was publicly embarrassed and humiliated, was caused to suffer severe emotional distress, was incarcerated and forced to incur legal expenses and costs to defend himself and obtain his liberty, was caused to feel unwell during the arrest processing and suffered embarrassment and pain and suffering during and due to his arrests.

151.  As a result of the above conduct, the City of New York is liable, under New York City Administrative Code § 8-803(b) and under the doctrine of respondeat superior, for the conduct of the Individual Defendants, and for any damages the Individual Defendants caused by and through their conduct.

## TENTH CLAIM FOR RELIEF

### *Violations of New York Civil Rights Law § 79-P Right To Record*

152.  Plaintiff hereby reallege and incorporate by reference all of the preceding paragraphs as though they were fully set forth herein.

153.  Prior to his assault, battery, and arrest, Mr. Guzman was exercising his rights under New York Civil Rights Law § 79-P, the New Yorker's Right to Monitor Act, to record law enforcement activity.

154.  The Defendant Officers were "officers" within the meaning of NY Civil Rights Act § 79-P.

155.  The Defendant Officers are "officers" and were involved in "law enforcement activity" within the meaning of NY Civil Rights Act § 79-P.

156.  Mr. Guzman was not under arrest or in the custody of the Defendant Officers when he began to record.

157.  In arresting Mr. Guzman, the July 28 Defendants exceeded their authority because their conduct was inconsistent with New York Civil Rights Law § 79-P and the Federal Constitutional.

158.  All Defendants violated New York Civil Rights Law § 79-P in that Mr. Guzman was arrested while he "exercised or attempted to exercise the right established in subdivision two of this section to record a law enforcement activity and an officer acted to interfere with that person's recording of a law enforcement activity" in one of the specified ways.

159.  Defendants unlawfully arrested Mr. Guzman to deter him from exercising his right to record law enforcement activity.

160.  New York Civil Rights Law § 79-P creates a private right of action that explicitly provides for punitive damages and injunctive relief, as well as mandatory attorneys' fees and expert fees.

161.  New York Civil Rights Law § 79-P defines "record" and the related right in extremely broad terms.

162.  Specifically, the law creates a right of action to sue for any law enforcement interference with the right, including "attempting to prevent [a] person from recording law enforcement activity."  New York Civil Rights Law § 79-P(3)(i); *see also, id* § (iv).

163.  Similarly, there is a cause of action where an officer — regardless of the fact of recording — engages in "commanding that the person cease recording law enforcement activity when the person was nevertheless authorized under law to record, as happened here.  New York Civil Rights Law § 79-P(3)(iii).

164.  Thus, the statute creates a right of action, and that right — like the similar First Amendment right — "does not depend on whether [a plaintiff's] attempt to videotape

was frustrated" (*Gericke v. Begin*, 753 F.3d 1, 3 n.2 (1st Cir. 2014)), or for that matter, only intended to create the *impression* someone was recording.

165.  Defendants' actions and policies alike violate New York Civil Rights Law § 79-P such that all the remedies available thereunder are appropriate.

166.  In committing the acts alleged herein, each of the Individual Defendants were members and agents of the New York City Police Department, acting at all relevant times withing the scope of their employment.  The Defendant City of New York is accordingly liable as principal for all torts in violation of State Law committed by its agents.

167.  The actions of the Individual Defendants were willful, malicious, oppressive, and/or reckless and were of such a nature that punitive damages should be imposed.

## ELEVENTH CLAIM FOR RELIEF

*Violations of New York City Administrative Code*
*Right To Record § 14-189 Police Activities*

168.  Mr. Guzman hereby realleges and incorporates by reference all the preceding paragraphs as though they were fully set forth herein.

169.  Prior to the assault, battery, and arrest, Mr. Guzman was exercising his rights under New York Civil City Administrative Code § 14-189, the Right to Record Police Activities.

170.  In arresting Mr. Guzman, all Defendants, including the Municipal Defendants, exceeded their authority because their actions were inconsistent with New York Civil City Administrative Code § 14-189.

171.  All Defendants violated New York Civil City Administrative Code § 14-189 in that Mr. Guzman was arrested while he "recorded or attempted to record police activities in

accordance with subdivision b and an officer interfered with such person's recording of police activities" in one of the specified ways.

172.  Defendants unlawfully arrested Mr. Guzman to deter him from exercising his right to record law enforcement activity.

173.  New York Civil City Administrative Code § 14-189 creates a private right of action that explicitly provides for punitive damages and injunctive relief, as well as attorneys' fees and expert fees.

174.  New York Civil City Administrative Code § 14-189 defines "record" and the related right in extremely broad terms.

175.  Specifically, the law creates a right of action to sue for any law enforcement interference with the right, including "interfer[ing] with such person's recording of police activities."  New York Civil City Administrative Code § 14-189(c)(1).

176.  Similarly, there is a cause of action where an officer — regardless of the fact of recording — engages in "stopping, seizing, searching, issuing any summons, or arresting any individual because such individual recorded police activities," as happened here. New York Civil City Administrative Code § 14-189(c)(1)(a-c).

177.  Thus, the code creates a right of action.

178.  Defendants' actions and policies alike violate New York Civil City Administrative Code § 14-189 such that all the remedies available thereunder are appropriate.

## TWELFTH CLAIM FOR RELIEF

***Violations of New York State Law Pursuant to the New York State Constitution and New York State Common Law***

179.  Mr. Guzman incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

180.  The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to Mr. Guzman pursuant to the state common law doctrine of respondeat superior.

### Violations of the New York State Constitution

181.  Defendants, acting under color of law, violated Mr. Guzman's rights pursuant to Article I, §§ 6, 8, 9, 11, and 12 of the New York State Constitution.

182.  A damages remedy here is necessary to effectuate the purposes of Article I, §§ 6, 8, 9, 11, and 12 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiff's rights under those sections.

### Assault

183.  Defendants committed assault within the meaning of New York common law against Mr. Guzman by intentionally placing Mr. Guzman in fear of imminent harmful or offensive contact.

### Battery

184.  Defendants committed battery within the meaning of New York common law against Mr. Guzman by intentionally subjecting  Mr. Guzman to an offensive touching without Mr. Guzman's consent.

### False Imprisonment and Unreasonable Detention

185.  By the actions described above, the police officials described above did falsely arrest and/or imprison Mr. Guzman within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any

right or authority to do so. Mr. Guzman was conscious of the confinement, and it was without his consent.

### Intentional and Negligent Infliction of Emotional Distress

186. Mr. Guzman incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

187. By the actions described above, Defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to Mr. Guzman.

188. The acts and conduct of the Defendants were the direct and proximate cause of injury and damage to Mr. Guzman and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

189. As a result of the foregoing, Mr. Guzman was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### Negligent Training and Supervision

190. Upon information and belief, Defendant City supervised, and trained the police officials described above.

191. The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### Excessive Detention

192. Defendants deliberately detained Mr. Guzman for an excessive and unreasonably prolonged period of time.

### Malicious Prosecution

193.  Defendants commenced criminal proceedings against Mr. Guzman maliciously and without probable cause.

194.  As a result of Defendants' acts and omissions, Defendants deprived Mr. Guzman of his federal, state, and/or other legal rights; caused Mr. Guzman bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Mr. Guzman to expend costs and expenses; and/or otherwise damaged and injured Mr. Guzman.

195.  The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## DEMAND FOR A JURY TRIAL

196.  Mr. Guzman hereby demands a jury trial of all issues capable of being determined by a jury.

## DEMAND FOR JUDGMENT

197.  WHEREFORE, Mr. Guzman demands judgment against the individual Defendants and the City of New York as follows:

   a.  Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

   b.  Actual damages in an amount to be determined at trial against the City of New York, and punitive damages to be determined at trial pursuant to N.Y.C. Admin. C. § 8-805(1)(ii), N.Y. Civ. R. L. § 79-Pand N.Y.C. Admin. C. § 14-189;

   c.  An appropriate restraining orders or injunctions pursuant to N.Y.C. Admin. C. § 8-805(3), N.Y. Civ. R. L. § 79-P(3)(c), and N.Y.C. Admin. C. § 14-189(c)(3);

   d.  Appropriate additional injunctive relief as may be determined at trial;

   e.  Statutory attorney's fees, disbursements, and costs of the action pursuant to, inter alia, 42 U.S.C. § 1988, N.Y.C. Admin. L. § 8-805(2), N.Y.C. Admin. C. § 14-189, N.Y. Civ. R. L. § 79-P, and New York common law;

   f.  Expert costs and fees pursuant to N.Y.C. Admin. C. § 14-189(c)(4) and N.Y. Civ. R. L. § 79-P(3)(d); and

g.   Such other relief as the Court deems just and proper.

Dated:  Ridgewood, New York
        October 31, 2025

**COHEN&GREEN P.L.L.C.**


By:_____
Regina Yu
1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
t: (929) 888-9480
f: (929) 888-9457
regina@femmelaw.com


**GIDEON ORION OLIVER**


_____

277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

*Attorneys for Plaintiff*